Keith Fichtelman (SBN 262476)
2800 Sturgis Road
Oxnard, California 93030
Telephone: 310.666.1989
Email: kfichtelman@gmail.com

Attorneys for Plaintiffs

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

IN RE

Mary Josephine Daroya-Lushina

JEROME DAROYA, Individually and on Behalf of Members of COOKIE AND KUYA ENTERPRISES, LLC; AROYAD VENTURES GROUP LLC dba JMDAROYA Associates, a California Limited Liability Company; JLDAROYA ASSOCIATES, a California Corporation;

Plaintiffs,

v.

MARY JOSEPHINE DAROYA-LUSHINA;

Defendant,

COOKIE AND KUYA ENTERPRISES, LLC, a California Limited Liability Company;

Nominal Defendant.

CHAPTER 7

Case No. 2:25-bk-10687-WB

Adv. Case No. 2:25-AP-01180-wb

**AMENDED ADVERSARY COMPLAINT FOR DENIAL OF DISCHARGE**

Plaintiffs JEROME DAROYA ("Mr. Daroya"), individually and derivatively on behalf of members of COOKIE AND KUYA ENTERPRISES, LLC ("CKE"); AROYAD VENTURES GROUP LLC dba JMDAROYA Associates ("AVG"); and JLDAROYA ASSOCIATES ("JLA") (collectively "Plaintiffs") hereby bring this Amended Adversary Complaint against MARY JOSEPHINE DAROYA-LUSHINA ("Daroya-Lushina" or "Defendant") for a denial of discharge pursuant to, among other possible things, 11 U.S.C. § 523 as the debts owed by Defendant to Plaintiffs obtained through false representations or actual fraud, embezzlement, fraud in a fiduciary capacity, and/or resulted from willful and malicious injuries caused by Defendant as follows:

**SUMMARY OF ALLEGATIONS**

1. This action arises out of an illegal scheme to commit various forms of financial fraud between Daroya-Lushina and her partner Dominick Ramos ("Ramos"). This included, among other things, fraudulently depriving Mr. Daroya of an interest he owns in a company, CKE, forging documents to affect the sale of a real property owned by CKE, illegally diverting payments to Defendant from AVG and JLA through a false change of address form filed with the US Postal Service, and stealing such payments. In furtherance of their illegal scheme, Ramos and Daroya-Lushina also filed false documentation with the California Secretary of State, filed false documentation with the United States Postal Service, provided forged documents to an escrow company, and stole payments that were made payable to AVG and/or JLA. Defendant willfully and intentionally took these actions with the specific intent to harm Plaintiffs.

2. Daroya-Lushina and Ramos also submitted fraudulent paperwork to illegally obtain PPP and EIDL loans on behalf of a company that had formally been owned and controlled by Daroya's father and a company that was a client of AVG and JLA. The latter has terminated its business relationship with AVG

and JLA, further causing Plaintiffs harm as a direct result of the improper PPP loan. Defendant intentionally submitted these fraudulently obtained PPP and EIDL loans with an intent to cause harm to AVG and JLA's business interests.

3. As a result of Ramos and Daroya-Lushina's illegal actions, Plaintiffs have suffered damages in excess of $500,000.

4. Plaintiffs previously filed a Complaint containing these allegations in the Los Angeles Superior Court in a case entitled *Daroya v. Daroya-Lushina*, Case No. 23STCV000174 (the "Underlying Action"), but the case had not yet reached trial and has been stayed by Daroya-Lushina's filing of this Chapter 7 Bankruptcy case.[1] A copy of the operative Complaint from the Underlying Action is attached as Exhibit A and incorporated herein as a basis for the debts described below.

**PARTIES**

5. Mr. Daroya is an individual who resides in the County of Los Angeles in the State of California. At all relevant times, Mr. Daroya was a member and manager of CKE.

6. CKE is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles County, California. At all relevant times, Mr. Daroya and Daroya-Lushina were each members of CKE each owning 50% of the company.

7. Mr. Daroya did not make a demand on the other members or managers of CKE prior to bringing this suit, in part, derivatively on behalf of CKE as Daroya-Lushina is the other member of the LLC and such demand would have been futile.

8. JLA was a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County, California.

[1] Ramos is a defendant in the Underlying Action, but is not a debtor in this Bankruptcy proceeding.

Mr. Daroya was the Chief Executive Officer and a shareholder of the company until it was recently dissolved.

9. AVG is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles County, California. AVG is the successor in interest to JLA following JLA's dissolution.

10. Daroya-Lushina is an individual who is believed to have at all relevant times resided in the County of Los Angeles in the State of California. Daroya-Lushina is Mr. Daroya's sister. Daroya-Lushina has also at all relevant times been a member and manager of CKE.

## JURISDICTION

11. This Court has subject matter jurisdiction over the claims in this Complaint as the claims and objections arise under Title 11 of the United States Code.

12. This Court has personal jurisdiction over Defendant as she filed this Chapter 7 Bankruptcy proceeding.

## GENERAL ALLEGATIONS

13. JLA was formed on or about December 31, 2019. JLA was a financial services firm owned by several shareholders including Mr. Daroya, Joselita Daroya, Melody Araya, Yolanda Guzman, and Daroya-Lushina.

14. At one time, Daroya-Lushina was a Director, President and Treasurer of the JLA.

15. Upon the death of their father, Mr. Daroya and Daroya-Lushina inherited a condominium located at 21610 South Perry Street, Unit 15 in Carson, California (the "Property"). Mr. Daroya and Daroya-Lushina decided that it would be best to hold the Property through a limited liability company that they would jointly own.

16. On or about September 30, 2020, Mr. Daroya and Daroya-Lushina created CKE for the purpose of holding their joint interest in the Property. CKE was created as a limited liability company under the laws of California. Mr. Daroya and Daroya-Lushina each owned a 50% membership of the CKE. Mr. Daroya and Daroya-Lushina followed all formal requirements for creation of an LLC under California law and clearly delineated their roles as managers and members and ownership interests.

17. At or around the time of CKE's creation, Mr. Daroya and Daroya-Lushina signed an Operating Agreement. The Operating Agreement specifically notes that Mr. Daroya and Daroya-Lushina each owned a 50% membership of CKE. The Operating Agreement also explicitly appointed both Mr. Daroya and Daroya-Lushina were appointed as managers of CKE. Mr. Daroya and Daroya-Lushina also agreed that the business address for CKE was 100 N. Brand Blvd., Unit 22B in Glendale, California.

18. On or about October 8, 2020, CKE filed a Statement of Information with the California Secretary of State. Among other things, the Statement of Information identified Mr. Daroya and Daroya-Lushina as each being managers of CKE. The mailing and street address for CKE was identified as 100 N. Brand Blvd., Unit 22B in Glendale, California. Mr. Daroya electronically signed the Statement of Information as a manager of CKE.

19. After establishing CKE, both Mr. Daroya and Daroya-Lushina contributed capital for the upkeep, maintenance, and renovation of the Property. From its inception, Mr. Daroya was actively involved in the management of CKE.

20. On or about June 9, 2021, the Directors of JLA voted to remove Daroya-Lushina from her positions with JLA "due to dereliction of duty including, but not limited to, breach of fiduciary trust, willful neglect of duties

and promotion of [personal] gain at the expense of the corporation and its share-holders." Upon her removal, Daroya-Lushina had actual notice and knowledge that she was no longer authorized to act on behalf of JLA as she had been removed as a director.

21. Following this action by the JLA Board of Directors, Daroya-Lushina and her boyfriend, Ramos, undertook the fraudulent scheme described herein in order to punish Mr. Daroya and other family members for removing Daroya-Lushina from her positions within JLA. This scheme included acting through CKE to effectively deprive Mr. Daroya of his interest in CKE; to sell CKE's primary asset, the Property; and to divert the proceeds from the sale of the Property to themselves to deprive Mr. Daroya of his share of such proceeds. The scheme also included Daroya-Lushina intentionally converting payments made to JLA for her own benefit and intentionally causing other harm to JLA's business interests and reputation.

22. In the following paragraphs, Plaintiffs specifically identifies falsified documents and communications in a good faith effort to comply with Rule 9(b) of the Federal Rules of Civil Procedure. At this stage in the litigation, Plaintiffs, however, do not have in their possession, custody and/or control all of the relevant emails, communications, and/or false documents that they believe were circulated/transmitted by and between Defendant, Ramos, and/or various third parties in furtherance of their fraudulent scheme. Plaintiffs are informed and believe that many such documents are exclusively in Defendant's or other third parties' possession. Plaintiffs are informed and believe that both Daroya-Lushina and Ramos were each responsible for sending multiple communications and submitting multiple documents in furtherance of their fraudulent scheme but cannot identify with certainty which was personally responsible for sending each such communication or document until certain discovery is permitted. Plaintiffs

therefore reserve the right to rely on such additional documents in support of their claims as such information becomes known through disclosure and discovery.

23. Unbeknownst to Mr. Daroya at the time, on September 23, 2021, Defendant filed, or caused Ramos to file, a new Statement of Information with the California Secretary of State that contained numerous falsehoods. Such falsehoods included that Daroya-Lushina was the sole manager of CKE. It also falsely identified the principal office for CKE as being at 955 Deep Valley Drive, Unit 2202 in Palos Verdes Peninsula, California. It also falsely identified the mailing address for CKE as 830 North Juanita Avenue in Redondo Beach, California. Defendant and/or Ramos submitted this fraudulent Statement of Information electronically through the internet. At the time of filing the new Statement of Information, Daroya-Lushina knew that the information contained therein was false.

24. On or about April 20, 2022, Defendant filed, or caused Ramos to file, an additional false Statement of Information with the California Secretary of State once again falsely listing Daroya-Lushina as the sole member of CKE and Ramos as its CEO. The filing also falsely identifies Defendant's Castaic residence as CKE's principal place of business. Defendant and/or Ramos submitted this fraudulent Statement of Information electronically through the internet. At the time of filing the new Statement of Information, Daroya-Lushina knew that the information contained therein was false.

25. Also, in or around September 2021, Daroya-Lushina began attempts to sell the Property without Mr. Daroya's knowledge or consent. To that end, Daroya-Lushina contacted Opendoor.

26. Opendoor is a Delaware company based in Arizona. Opendoor operates a website whereby property owners can submit information regarding

properties that they are attempting to sell and Opendoor will make cash offers for the properties.

27. Opendoor agreed to purchase the Property. Mr. Daroya is informed and believes, and on that basis alleges, that Opendoor and/or its title insurance company required Daroya-Lushina to provide certain company records to prove that Daroya-Lushina was authorized to complete the sale of the Property on behalf of CKE.

28. Daroya-Lushina submitted numerous fraudulent documents to Opendoor and/or an escrow officer through the US mails and/or by electronic means. Such documents included a fraudulent copy of CKE's Operating Agreement wherein Mr. Daroya's ownership of the company was identified as 5% and Daroya-Lushina's ownership was identified as 95% rather than the actual 50% ownership held by each as identified in the actual Operating Agreement. Daroya-Lushina also submitted documents falsely indicating that Mr. Daroya had surrendered his share of CKE and bore a forgery of Mr. Daroya's signature. Mr. Daroya did not at any time sign this document or agree to forgo his interest in CKE or the Property.

29. Defendant intentionally concealed the facts relating to the sale of the Property and the theft of Mr. Daroya's interest in CKE from Mr. Daroya until after the Property was sold as Daroya-Lushina knew that was not actually entitled to retain the proceeds from the sale.

30. Based on the fraudulent documents, Daroya-Lushina claimed to have authority to bind CKE to a sale of the Property and proceeded to sell the Property to Opendoor for the amount of $496,500. Daroya-Lushina arranged for the proceeds from the sale of the Property to be sent directly to her and not to any account held by CKE.

31. Thereafter, Daroya-Lushina converted the proceeds from the sale of the Property to her personal benefit and did not provide any share of the proceeds to Mr. Daroya or CKE. Mr. Daroya is informed and believes, and on that basis alleges, that Daroya-Lushina used portions of the proceeds of the sale of the Property to acquire a Mercedes SUV, to pay travel expenses for other family members, to pay her personal living expenses, and for other personal expenditures that did not benefit Mr. Daroya or CKE.

32. Mr. Daroya also learned soon before filing the Underlying Action that Daroya-Lushina, with the believed assistance of Ramos, illegally obtained government Paycheck Protection Program ("PPP") loans and Economic Injury Disaster Loans ("EIDL").

33. Mr. Daroya is informed and believes, and on that basis alleges, that Defendant obtained at least $16,879 for a PPP loan and $86,000 in EIDL loans on behalf of a company called Jose K. Daroya, CPA APC – a company that had been created and run by Daroya's father prior to his passing.

34. After their father's passing, Defendants apparently filed documentation with the California Secretary of State falsely identifying herself and Ramos as the officers and directors of Jose K. Daroya, CPA APC. Defendants also then obtained the identified government loans with all proceeds being directed to Daroya-Lushina and/or Ramos. Lenders are now trying to collect payments for such loans from Plaintiffs as they operate from the same address that had previously been identified for Jose K. Daroya, CPA APC. As Daroya-Lushina is not an accountant, she was aware that she could not legally own or manage Jose K. Daroya, CPA PAC, as it was a professional accounting entity.

35. Plaintiffs are informed and believe, and on that basis allege, that Defendant also at least attempted to fraudulently obtain a PPP loan in the name

of one of JLA's clients. Plaintiffs learned of the loan when the client contacted Mr. Daroya to inquire about correspondence the client had received from the U.S. Small Business Administration regarding the fraudulent loan application. The client thereafter terminated his business relationship with Plaintiffs causing Plaintiffs financial harm as a result of Defendants' conduct. Daroya-Lushina intentionally tried to obtain this loan with full knowledge that she was not authorized to do so and, at least in part, acted with the specific intent to cause harm to Plaintiffs' business interests.

36. On or about April 10, 2022, Defendant electronically filed, or caused Ramos to file, a Statement of Information with the California Secretary of State purportedly on behalf of JLA which falsely identified Daroya-Lushina as the sole Director and Officer of JLA. The false Statement of Information also identified JLA's principal address and mailing address as Defendants' home in Castaic, California and the agent for service of process as Daroya-Lushina and another of her addresses in Redondo Beach, California. At the time of filing the new Statement of Information, Daroya-Lushina knew that the information contained therein was false and knew that she was no longer a director of JLA and had no legal authority to act on behalf of JLA.

37. Plaintiffs also discovered soon before filing the Underlying Action that Defendant had filed, or caused Ramos to file, a false change of address form with the United States Postal Service for JLA and several other entities associated with Mr. Daroya purportedly creating a forwarding address for JLA and the other entities with directions to forward mail to Defendant's address in Castaic, California. At the time of filing the change of address forms, Daroya-Lushina knew that she was no longer a director of JLA and had no legal authority to act on behalf of JLA.

38. Plaintiffs are still investigating the full extent of what mail may have been improperly forwarded to Defendant, but it included at least several checks made payable to JLA from JLA's clients. Defendant apparently forged endorsements on such checks and illegally converted the payments to her own benefit. Plaintiffs learned of such activities when inquiring of their clients regarding missing payments and the clients providing evidence of when and where the payments were sent and that checks had been deposited. Daroya-Lushina knew at the time of converting these payments that she was no longer a director of JLA, had no legal authority to act on behalf of JLA, and had no legal right to receive or retain such payments. In illegally converting these payments, Daroya-Lushina intended to harm JLA.

39. Additionally, Plaintiffs discovered that Defendant was modifying internet websites owned or controlled by JLA, including JLA's "Google My Business" site. Defendant changed the name of the business on the Google site to "JLDAROYA CROOKS AND ASSOCIATES" and changed access passwords so that Mr. Daroya and others with JLA could not access the site to change the information. Plaintiffs are informed and believe, and on that basis allege, that Defendant was able to obtain access to the site through the electronic submission of false information. Daroya-Lushina knew at the time that she intentionally took these actions that she was no longer a director of JLA and had no authority to act on JLA's behalf. In taking these actions, Daroya-Lushina intended to harm JLA's business interests and reputation.

40. Within the past 12 months, Mr. Daroya and/or his wife have been receiving strange packages through Amazon. Such packages have included, among other things, lingerie sent to Mr. Daroya in a size other than his wife's size and Mr. Daroya's wife received a book about how wives should deal with cheating husbands. Mr. Daroya is informed and believes, and on that basis

alleges, that Daroya-Lushina was intentionally sending these packages to Daroya's residence with the malicious intent to embarrass Daroya, cause Daroya marital problems, or otherwise cause Daroya emotional distress.

**COUNT I - FRAUD**

**11 U.S.C. § 523(a)(2)(A)**

Count I is withdrawn.

**COUNT II – EMBEZZLEMENT & LARCENY**

**11 U.S.C. § 523(a)(4)**

41. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

42. 11 U.S.C. § 523(a)(4) provides:

> A discharge under [Chapter 7] . . . does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

43. As alleged above, Daroya-Lushina was a member and manager of CKE. Under California law, managers of an LLC are fiduciaries and owe certain fiduciary duties to the LLC and the LLC's members. Daroya was a member of CKE.

44. Acting in a fiduciary capacity, Daroya-Lushina committed the fraudulent acts above which amounted to embezzlement and/or larceny in that she took amounts that were owed to CKE and/or its other member, Daroya, for proceeds from the sale of the Condominium.

45. The debt owed to CKE and Daroya as a result of Daroya-Lushina's embezzlement and larceny should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

46. Such debts included at least $496,500 owed to CKE, approximately $200,000 owed to Daroya, as well as a yet to be determined amount of punitive

damages owed to each Plaintiff in an amount believed to be at least double the debts identified herein.

WHEREFORE, Plaintiffs request that this Court enter an order finding that the debt owed to Plaintiffs, plus additional damages and interest excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) and granting Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

**COUNT III – WILFUL AND MALICIOUS INJURIES**

**11 U.S.C. § 523(a)(6)**

47. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs above as though set forth fully herein.

48. 11 U.S.C. § 523(a)(6) provides:

> A discharge under [Chapter 7] . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another.

49. Daroya-Lushina undertook a willful and malicious scheme to harm the Plaintiffs. As discussed in further detail above, such scheme included:

a. Daroya-Lushina intentionally filed, causing to be filed, false Statements of Information with the California Secretary of State and false change of address forms with the U.S. Postal Service. At the time she intentionally took these actions, she knew the information contained therein was false and that she did not have the authority to file these on behalf of either CKE or JLA

b. Daroya-Lushina falsified documents and intentionally sent them to OpenDoor with the intent to deprive Mr. Daroya of his rights as a manager and member of CKE. At the time she

intentionally sent these documents, Daroya-Lushina knew that the documents were falsified and fraudulent.

c. Daroya-Lushina intentionally and illegally converted the proceeds of the sale of CKE's Property for her own personal use and benefit and wrongfully and intentionally depriving CKE and Mr. Daroya from receiving the proceeds.

d. Daroya-Lushina intentionally and illegally diverted payments made payable to JLA with full knowledge that she was no longer a director of JLA and had no legal right to divert or convert the payments for her own use.

e. Daroya-Lushina intentionally and illegally obtained PPP and EIDL loans for entities for which she knew she had no authority to act.

f. Daroya-Lushina intentionally sent items to Mr. Daroya's home with the specific intent to cause Mr. Daroya harm and embarrassment.

g. Daroya-Lushina intentionally accessed JLA's Google business site while knowing that she was not authorized to do so and intentionally altered the content to contain false, misleading, and/or malicious content.

50. All of these actions taken by Daroya-Lushina in furtherance of this scheme were done so intentionally with the actual intent to harm Plaintiffs. Furthermore, all of these actions taken by Daroya-Lushina did in fact cause harm to Plaintiffs and/or their business interests.

51. Daroya-Lushina's actions were intentional, willful, wanton, and performed with the actual intent to harm the Plaintiffs and did in fact cause Plaintiffs' harm and injuries.

52. The debt owed by Defendant to Plaintiffs as a result of Daroya-Lushina's willful and malicious acts should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

53. Such debts included at least $496,500 owed to CKE, approximately $350,000 owed to Mr. Daroya, and approximately $50,000 to each JAL and AVG, as well as a yet to be determined amount of punitive damages owed to each Plaintiff in an amount believed to be at least double the debts identified herein.

WHEREFORE, Plaintiffs request that this Court enter an order finding that the debt owed to Plaintiffs, plus additional damages and interest excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) and granting Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all causes of action and issues that are triable by a jury.

Dated: September 4, 2025

By: ______________________
Keith Fichtelman
Attorneys for Plaintiffs